**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

LEONARD LEWIS KING,

           Petitioner,

v.                                                     Case No. 3:20-cv-11273

MIKE BROWN,

           Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING MOTION FOR RELEASE DUE TO COVID-19**

Petitioner Leonard Lewis King ,a Michigan prisoner, filed this action under 28 U.S.C. § 2254. Petitioner is serving a lengthy prison sentence as a result of his Livingston Circuit Court jury trial conviction of second-degree home invasion, MICH. COMP. LAWS § 750.110a(3), attempted third-degree home invasion, MICH. COMP. LAWS § 750.110a(4), possession of burglar tools, MICH. COMP. LAWS § 750.116, and receiving and concealing stolen property. MICH. COMP. LAWS § 750.535(3)(a).

Petitioner enumerates his habeas claims as follows: (I)(A) Petitioner was denied the effective assistance of counsel when his trial attorney failed to move to suppress Petitioner's statement to police, (I)(B) Petitioner was denied the effective assistance of counsel when his trial attorney failed to object to in-court identification testimony, (2) the prosecutor knowingly used false testimony that Petitioner was not under arrest when he was questioned, (3) Petitioner's request to consult with counsel was disregarded by

police during his interrogation, and (4) Petitioner's appellate counsel was ineffective for failing to raise meritorious claims on direct review.

The court will deny the petition because Petitioner's claims are procedurally defaulted or without merit. The court will also deny Petitioner a certificate of appealability and deny his motion for release.

## I. BACKGROUND

Petitioner was charged in connection with a series of break-ins occurring in residential neighborhoods around Brighton, Michigan. The Michigan Court of Appeals summarized the trial facts:

> Defendant first broke into the home of Charles and Judy Lewis sometime between the hours of 11:00 a.m. and 8:30 p.m. on May 21, 2013. Defendant stole a variety of jewelry, worth roughly $15,000. There were no signs of forced entry at the home, and no fingerprints were recovered.
>
> On May 24, 2013, Kristy Rabeau was home with two children when defendant rang her doorbell around 10:30 a.m. Rabeau did not answer; rather, she watched defendant try to open her garage door, and then ring the doorbell to her back door. Rabeau's dogs barked at defendant. Rabeau took her children to a bedroom, retrieved a gun, and called 911. She then saw defendant looking into her bedroom window as she spoke to the 911 operator. Michigan State Trooper Greg Galarneau responded to the report and searched the area for defendant.
>
> Defendant, however, had apparently moved on to a third target. Around 10:30 a.m. or 11:00 a.m., Sarah Graham, who lived a mile away from Rabeau, heard her doorbell ring, and then heard a loud knocking on the door. She thought this was unusual and did not respond. A man appeared and attempted to open a rear door. He then peered in through a window. Graham was unable to see the man's face. The man went to the front of the house and again rang the doorbell. Graham went upstairs, hoping to see the vehicle the man drove to the house. However, she saw Galarneau arrive at her front door. Galarneau had spotted a man matching the description given by Rabeau opening a screen door to Graham's house, and immediately approached this man, defendant.
>
> Defendant spotted Galarneau, who was in a marked police vehicle. Defendant walked toward a green Chevrolet Cavalier parked in Graham's

> driveway. Craig Theunick was in the driver's seat of this vehicle, which was in gear. Defendant got in the passenger seat, but before the two could escape, Galarneau approached, directed Theunick to stop the engine, and retrieved the keys to the vehicle from Theunick. Neither man could give a reasonable explanation for being at the home. Galarneau handcuffed defendant and patted him down. This search found a circle-shaped piece of plastic, which appeared to be a tool used to unlock a door (as one might use a credit card), and a glove. He also found a syringe and hypodermic needle in defendant's pocket. Galarneau found diamond rings and a velvet pouch as well.
>
> Galarneau searched the car and found an open backpack containing various pieces of jewelry, a crowbar, a magnet, a magnifying glass, walkie-talkies with headphones, and gloves. He also found a crack pipe under the front passenger seat and another syringe. Some of the jewelry found in the car belonged to Judy Lewis.
>
> Defendant lived in a motel managed by his wife, and where defendant worked as a maintenance employee. Defendant's wife allowed police to search their room, and this search led to the discovery of numerous items of jewelry and jewelry boxes. Defendant's wife acknowledged that the jewelry did not belong to her. Officers were able to return some of the jewelry recovered to the Lewises. Defendant's wife testified that defendant had found the jewelry and other items while cleaning rooms at the motel. She acknowledged that defendant used heroin with Theunick. She acknowledged telling officers that defendant spent $100 a day on heroin. While she denied it at trial, defendant's wife had told officers that she was also addicted to heroin.
>
> Defendant was charged in two lower court cases. In Docket No. 13-021340-FH, defendant was charged with possession of burglar's tools and attempted third-degree home invasion for his attempted burglary of Rabeau's home. In Docket No. 13-021416-FH, defendant was charged with second-degree home invasion and receiving or concealing stolen property for his burglary of the Lewis's home. The two cases were joined for trial, and as noted, defendant was found guilty of all charges.

*People v. King*, 2018 WL 1020174 at *1-2 (Mich. Ct. App. Feb. 22, 2018).

Following trial, Petitioner pursued a direct appeal. His counsel filed an appellate brief that raised three claims:

> I. Did the trial court err when denying Defendant's motion for an evidentiary hearing when Defendant was denied the constitutional right to effective assistance of counsel when trial counsel's deficient performance prejudiced

>the Defendant resulting in the convictions and Defendant had supplied an abundance of areas of ineffectiveness?
>
>II. Was Defendant denied a fair trial when two cases were joined, which had separate victims and the alleged conduct was unrelated?
>
>III. Is Defendant entitled to resentencing because the sentence imposed is a departure unsupported by a substantial and compelling reason?

Petitioner later filed his own supplemental pro se brief that raised an additional three claims:

>IV. Defendant was denied his constitutional right to effective assistance of counsel and constitutional right to impartial jury when counsel failed to dismiss a biased juror.
>
>V. Defendant was denied his constitutional right to a fair trial when prosecution injected prejudicial innuendo unsupported by any evidence of defense witness knowingly selling stolen property and being a party to the crime.
>
>VI. Defendant was denied constitutional right to a fair trial when prosecution argued multiple times that defendant was guilty by association.

The Michigan Court of Appeals affirmed in an unpublished opinion. *People v. King*, 2016 WL 555860 (Mich. Ct. App. Feb. 11, 2016). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, and the court remanded the case for resentencing proceedings. *People v. King*, 903 N.W.2d 554 (Mich. 2017) (Table). After remand, the Michigan Court of Appeals affirmed Petitioner's sentence. *King*, 2018 WL 1020174.

In 2018, Petitioner returned to the trial court and filed a motion for relief from judgment. The motion raised four ineffective assistance of counsel claims: (1) failure to request a hearing on the voluntariness of his statement to police, (2) failure to request a hearing on his claim about the prosecution not turning over exculpatory evidence, (3)

4

failure to call an alibi witness, and (4) failure to object to an in-court identification. Petitioner also raised three additional claims: (5) the prosecution relied on perjury, (6) the prosecution admitted Petitioner's statements to police after he invoked his right to counsel, and (7) the prosecution erroneously asserted that Petitioner had been identified. Petitioner also asserted that his appellate counsel was ineffective for failing to raise meritorious claims on direct appeal. (ECF No. 11-13.)

The trial court denied the motion for relief from judgment, rejecting the new claims under Michigan Court Rule 6.508(D)(3) and because they lacked merit. (Order, ECF No. 11-13, PageID.903-07.)

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, but it was denied because Petitioner "failed to establish that the trial court erred in denying the motion for relief from judgment." (Mich. Ct. App. order, June 14, 2019, p. 1). Petitioner applied for leave to appeal in the Michigan Supreme Court, but review was denied by standard form order citing Michigan Court Rule 6.508(D). *People v. King*, 940 N.W.2d 78 (Mich. 2020) (Table).

## II. STANDARD

Title 28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

5

'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

### III. DISCUSSION

### A. Procedural Default

Respondent argues that Petitioner's Habeas Claims I(A), II, and III are procedurally defaulted because the trial court found on post-conviction review that the claims were barred under Michigan Court Rule 6.508(D)(3) for Petitioner's failure to establish "good cause" and "actual prejudice" for failing to raise them on direct review.

Federal habeas review may be precluded where the state court denied relief based on a state procedural ground. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last

explained state court ruling is used to determine whether a state court adjudication rests on state procedural grounds. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Petitioner's Habeas Claims I(A), II, and III were first presented to the state courts in his motion for relief from judgment. The Michigan Supreme Court denied relief with citation to Michigan Court Rule 6.508(D), and the Michigan Court of Appeals did not state any basis for its decision. Sixth Circuit precedent establishes that the form orders used by the Michigan appellate courts to deny Petitioner post-conviction relief are ambiguous as to whether they refer to a procedural rule or constitute a rejection on the merits. *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Under *Guilmette*, in this situation, the court must "look through" the unexplained orders of the Michigan appellate courts to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

The state trial court briefly discussed the merits of the claims, but it also clearly stated that "Defendant has failed to show that he is entitled to relief under MCR 6.508(D)(3)." (ECF No. 11-13, PageID.905-06.) The reliance on Rule 6.508(D)(3) constitutes the invocation of an independent and adequate state procedural ground for decision. *See Ivory v. Jackson*, 509 F.3d 284, 292-293 (6th Cir. 2007); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). The brief discussion of the merits in conjunction with reliance on Rule 6.508(D)(3) still constitutes a decision resting on a state procedural rule. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998). The state courts thus relied upon an independent and adequate state procedural rule to deny Petitioner relief on these claims.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner asserts in his Habeas Claims IV that ineffective assistance of appellate counsel constitutes cause to excuse his procedural default. Yet, it is well-established that a criminal defendant does not have a constitutional right to have his appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*,

463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that by omitting the defaulted claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial issues on direct appeal including numerous other claims challenging the effectiveness of trial counsel, as well as a sentencing claim that the obtained relief from the Michigan Supreme Court.

The omitted claims were not clearly stronger. All the defaulted claims are aimed at challenging Petitioner's statement to police. But the statement amounted only to Trooper Galarneau's testimony that Petitioner told him he was a maintenance man at a motel and that he found the jewelry while working there. (Tr. I, at 226, 231; ECF No. 11-6, PageID.399, 400, and 405.) The statement was—in broad strokes—consistent with Petitioner's trial defense. (Tr. III, at 44, ECF No. 11-8, PageID.521.) At trial, Petitioner's wife testified in the defense case that she worked with Petitioner at the motel, and the couple often found jewelry there and kept it if it was not later claimed. (Tr. II, at 157; ECF No.11-7, PageID.480.) She testified that jewelry found in the car came from the motel. (id., PageID.481-82.) She indicated the motel had a "bad rep," and was

9

frequented by criminals, suggesting a more innocent explanation for how the victim's jewelry ended up in Petitioner's possession. (id.) Because the admitted statement to police was supportive of the defense theory, Petitioner was not prejudiced by its admission. Appellate counsel did not omit claims on direct appeal that were clearly stronger than the ones presented. Petitioner has therefore failed to demonstrate cause to excuse his procedural default.

Petitioner also fails to demonstrate that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Petitioner makes no such showing.

Review of Habeas Claims I(A), II, and III, are therefore barred by Petitioner's procedural default. Petitioner he has failed to demonstrate cause to excuse the default via his Habeas Claim IV.

### B. Ineffective Assistance of Counsel

Habeas Claim I(B) was presented to the state courts during Petitioner's direct appeal. In it, Petitioner claims that his trial counsel was ineffective for failing to move to suppress the in-court identification testimony of one of the victims. The Michigan Court of Appeals rejected the claim as follows:

> [D]efense counsel was not ineffective for failing to move for an evidentiary hearing on identification of defendant as the perpetrator. Defendant was arrested near the scene of one crime, while in possession of stolen items from the other. In court, one victim positively identified defendant as the perpetrator. The evidence presented closely linked defendant to the crimes committed. Defendant has failed to demonstrate that an evidentiary hearing

10

>could have provided any relevant or useful testimony to support his argument.

*King*, 2016 WL 555860, at *4.

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The present claim of ineffectiveness involves trial counsel's failure to move to suppress the in-court identification of Petitioner by one of the victims where she was not subjected to a line-up prior to the preliminary examination and trial. The suppression of in-court identification testimony is warranted only if, on the totality of the circumstances, "improper police conduct created a 'substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). The "corrupting effect of the suggestive identification" must be weighed against factors indicating that the eyewitness

11

identification is reliable, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

The state court adjudication of this claim was not unreasonable. Petitioner's counsel was not ineffective for failing to raise a meritless challenge to identification testimony. Kristy Rabeau testified at trial that Petitioner was the man who was looking through the sliding glass door of her patio and then her bedroom window. (Tr. II, p. 71-73, ECF No. 11-7, PageID.459.) It was 10:30 in the morning, she observed the man for a few minutes, she got a good look at his face, and she described him to the 911 operator as wearing a red plaid shirt. (id., p. 76; PageID.460). The state trooper who arrested Petitioner in the adjacent neighborhood soon after the incident at Rabeau's, testified that Petitioner was wearing a red striped flannel shirt. (Tr. I, p. 171; ECF No. 11-6, PageID.385.)

The circumstances of the identification therefore indicate that Rabeau's in-court identification of Petitioner as being the man she saw casing her house was reliable. The eyewitness had an excellent opportunity to view the perpetrator, she had a high degree of attention focused on the man, her description of the man's clothing accurately described what Petitioner was wearing when he was arrested, and she indicated certainty as to her identification. Given the record evidence, the state court adjudication of this claim therefore did not involve an unreasonable application of the *Strickland* standard. Counsel was not ineffective for failing to make a meritless objection. *See,*

*e.g., Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

As none of Petitioner's claims merit relief, the petition will be denied.

Finally, Petitioner's motion for release pending resolution of his petition due to COVID-19 is denied as moot. (ECF No. 12.)

### IV. CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, the court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. The court will therefore deny a certificate of appealability.

### V. CONCLUSION

IT IS ORDERED that the petition for a writ of habeas corpus is DENIED. IT IS ALSO ORDERED that a certificate of appealability is DENIED.

Finally, IT IS ORDERED that Petitioner's motion for release (ECF No. 12) is DENIED AS MOOT.

s/Robert H. Cleland                /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: August 6, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 6, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner            /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C3 ORDERS\20-11273. KING .Habeas.Covid.bb.chd.docx